SPIGARELLI *v.* OLIVER IRON MINING CO.

1. Workmen's Compensation—Setting Aside of Settlement Agreement—Fraud—Burden of Proof.

In employee's suit to set aside agreement to suspend payment of workmen's compensation because of fraud practiced on him, plaintiff meets his burden of proof by showing such agreement was signed because of belief induced that he was simply signing a receipt for past compensation which would not bar him from receiving further compensation.

2. Same—Fraud—Evidence—Ability to Read and Write English.

The fact that an employee who signed an agreement to suspend payment of workmen's compensation could not read or write English *held,* insufficient of itself to justify a decree setting aside agreement for fraud, although it might be considered with other facts to show his ignorance in signing the agreement.

3. Same—Herniotomy—Fraud—Evidence.

In suit to set aside agreement to suspend payment of workmen's compensation, executed about a month after he had submitted to unsuccessful herniotomy, evidence of fraud practiced upon plaintiff *held,* sufficient to require decree setting such agreement aside, notwithstanding agreement with plaintiff's attorneys, executed before the operation, stopping compensation if operation were successful.

Appeal from Dickinson; Bell (Frank A.), J. Submitted April 14, 1936. (Docket No. 85, Calendar No. 38,868.) Decided June 11, 1936.

Bill by John Spigarelli against Oliver Iron Mining Company, a corporation, to set aside agreement suspending payment of workmen's compensation. Bill dismissed. Plaintiff appeals. Reversed, and decree entered for plaintiff.

*Derham & Derham,* for plaintiff.

*Charles M. Humphrey* and *Charles M. Humphrey, Jr.* (*Elmer F. Blu,* of counsel), for defendant.

BUTZEL, J.  John Spigarelli, 56 years of age, an Italian by birth, who neither reads nor writes the English language, had been employed as a miner by defendant for 25 years when on July 29, 1932, he was severely injured through being struck in the groin by a bar.  Thereafter he did some light work, but finally was compelled to stop.  He was awarded compensation for partial disability at the rate of $6.60 per week, and up until November 6, 1934, received the total sum of $782.10.  On November 1, 1934, a memorandum was drawn and signed by plaintiff's attorneys which provided:

"Our client, John Spigarelli, agrees to undergo a herniotomy. * * * The Oliver Mining Company is to pay compensation for partial disability at the rate of $6.60 per week * * * up to the date Spigarelli enters the hospital to undergo said operation, as per award of deputy commissioner Leon J. Mac-Manman. * * * During such time as Spigarelli may be confined to the hospital and until discharged by the doctor, it is understood that he shall be paid for total disability at the rate of $18 per week, but not to exceed 30 days from the date of the operation.  It is also understood that the Oliver Iron Mining Company shall pay the hospital expense during the period * * * but not to exceed 10 days, and that they will also pay the bill of Dr. James Browning."

On November 7, 1934, in accordance with this memorandum, plaintiff entered the Iron Mountain General Hospital where a herniotomy was performed on him.  On the same day he entered into an

agreement with defendant fixing compensation at $18 per week. The operation was unsuccessful, the hernia recurring. Plaintiff has not been able to do any heavy work since the operation and, from the testimony, it would appear that the disability is permanent. He at no time recovered from his total disability. On December 4, 1934, Mr. Leonard, defendant's casualty supervisor and cashier, who had been with the company for 32 years and whom plaintiff had known for 25 years, went to the latter's home. He took with him a check for $72 then due plaintiff for four weeks at the rate of $18 per week. He gave plaintiff the check and had him sign four papers. Plaintiff testified that he was assured he was only signing a receipt for accrued compensation and that in reply to his query Leonard told him that the papers did not discontinue the compensation, but constituted the first payment that became due after plaintiff came out of the hospital. Plaintiff claims that on January 6, 1935, when he went to defendant's office for a second payment, he ascertained for the first time that he had signed an agreement suspending further payment of compensation. The agreement was filed and approved by the department. It showed the amount that had been paid for compensation and it did contain a provision that if further disability from the injury should develop thereafter, the agreement would not bar plaintiff from asking for further compensation. Plaintiff filed such a petition and the deputy commissioner awarded him $14.28 per week, but on review by the department the award was set aside. The opinion filed by the department recited that the operation on plaintiff was not successful and according to the medical testimony the only possibility of curing the hernia would be to transport tissue from another

part of the body and then the outcome would be dubious; that hard labor would make the hernia increase in size because of the natural defect in the fascial structure; that plaintiff claimed he had signed the agreement to suspend compensation in the belief that it was only a receipt for payment on account; that if the agreement had been obtained by fraud, the department had no jurisdiction to set it aside; that the clause in the agreement providing that plaintiff should not be barred from petitioning for further compensation should disability "hereafter develop" from the injury gave the department no right to award further compensation because plaintiff was disabled at the time the agreement to stop compensation was entered into and, consequently, there was no change of condition.

Plaintiff thereupon filed a bill in the instant suit to set aside the agreement to suspend compensation on account of fraud practiced on him. The trial judge in finding that there was no fraud, based his opinion mainly upon the memorandum, hereinbefore quoted, signed by plaintiff's attorneys on November 1, 1935, where they agreed on behalf of plaintiff that he would submit to the operation and that he should receive $18 per week for a period of not over four weeks.

The issue in the case is solely one of fact. Plaintiff met his burden by showing that he signed the agreement because of representations inducing the belief that he was simply signing a receipt for past compensation which would not bar him from receiving further compensation. The fact that plaintiff could not read or write English is not sufficient of itself to justify a decree for fraud. *Kallas* v. *Ann Arbor City Waterworks,* 272 Mich. 648. It may, however, be considered with the other facts to show

plaintiff's ignorance in signing the settlement agreement. Plaintiff testified that he relied upon the cashier with whom he has been well acquainted for so many years; that he was still very weak at the time; that he was assured that his compensation would continue during disability; that otherwise he would not have signed the agreement. Plaintiff's counsel testified that when the operation was tendered and accepted and the memorandum of November 1, 1934, signed, he was assured by the doctor that the herniotomy would only disable plaintiff for four weeks. He advised plaintiff that if the operation was successful, he would not be entitled to any compensation as soon as he had recovered from the operation and was able to work. It is clear from the testimony that the operation was neither tendered nor accepted as an idle gesture, but in the belief that it would effect a cure. The operation was not successful and plaintiff continued to be disabled. When the agreement to suspend compensation was entered into, plaintiff's attorneys were not present. No members of plaintiff's family were called in to witness the agreement, but it was taken to the office of defendant where another employee signed as witness although he never saw plaintiff sign the document. The surgeon who appeared as a witness for defendant testified that on the date of the agreement plaintiff was not able to work as a miner. The doctors are in accord that plaintiff has not recovered. Plaintiff's daughter testified that she was present part of the time; that she saw the agreement with the large caption stating it was for the purpose of suspending further compensation, but that she heard Leonard assure her father that the papers were only a receipt and did not bar him from obtaining further compensation. Both plain-

tiff and his wife testified to the same effect. We, moreover, are impressed with the testimony or admissions of Leonard, defendant's witness, who stated that when plaintiff signed the document, he complained of his side and thereupon Leonard said to him:

"That is a natural consequence of an abdominal operation, after you get out and working around a little bit it will clear up, and I said if it does not, the settlement agreement gives you the right to apply for additional compensation which he did on January 9th."

While the testimony indicates quite fully that although Leonard may not have intended to defraud and did not do so deliberately, and believed that he was acting in accordance with previous arrangements, nevertheless his representations made with the knowledge that plaintiff had not recovered, resulted in a fraud on plaintiff, who was thereby induced to believe he only was signing receipts and not a document that would stop compensation.

The decree of the lower court is reversed, with costs to plaintiff. A decree may be entered setting aside the agreement to stop compensation.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.